IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-02578-PAB-SKC

JASON BROOKS,

    Plaintiff,

v.

CORRECTIONAL HEALTH PARTNERS, and
JOHN DOE, MD., President and CEO of Correctional Health Partners,

    Defendants.

# ORDER

This matter is before the Court on the Recommendation re: Defendants' Motion for Summary Judgment [Dkt. 108] & Plaintiff's Motion to Amend [Dkt. 118] [Docket No. 149]. Plaintiff objected to the recommendation, Docket No. 150, and defendants responded. Docket No. 151.

## I. BACKGROUND[1]

In October 2016, plaintiff injured his right knee during a weightlifting competition at Fremont Correctional Facility, where he was incarcerated. Docket No. 148 at 1.

---

[1] Plaintiff does not object to the following facts, which are taken from the magistrate judge's recommendation. *See* Docket No. 149 at 1–2; *see generally* Docket No. 150. Many of the undisputed facts parallel those provided in former defendant Dr. Susan Tiona's motion for summary judgment. *Compare* Docket No. 105 *with* Docket No. 108. Plaintiff also did not object to the undisputed facts set forth in the magistrate judge's recommendation on Dr. Tiona's motion, *see* Docket Nos. 144 at 1–2; Docket No. 145 at 1, which the Court recounted in the order accepting that recommendation. *See* Docket No. 148 at 1–3. The Court has reviewed this non-objected to portion of the recommendation and finds no clear error. *See* Fed. R. Civ. P. 72(b), Advisory Committee Notes.

After pursuing a conservative course of treatment, Dr. Tiona ordered an MRI of plaintiff's knee. *Id.* at 2. The MRI revealed a small tear of the outside cartilage at the back of the knee joint, no tears on the inside cartilage, evidence of a chronic posterior cruciate ligament tear, and a large osteochondral defect. *Id*. In October 2017, plaintiff had arthroscopic surgery to repair the tear. *Id*.

Plaintiff initiated this action on October 9, 2018, against Dr. Tiona, Correctional Health Partners ("CHP"), and John Doe, M.D. ("Doe"), as president and CEO of CHP. *See* Docket No. 1 at 1.[2] Plaintiff's amended complaint asserts claims under the Eighth and Fourteenth Amendments, Docket No. 28 at 11–16, as well as for civil conspiracy and a claim challenging the constitutionality of Colo. Rev. Stat. § 13-20-602, which requires plaintiffs seeking to bring certain professional negligence claims to obtain a certificate of review before filing a lawsuit. *Id.* at 16–19.

On August 29, 2019, the Court accepted the magistrate judge's recommendation, Docket No. 34, and dismissed plaintiff's Fourteenth Amendment and statutory claims. Docket No. 40 at 2. Dr. Tiona filed a motion for summary judgment on plaintiff's Eighth Amendment claim. Docket No. 105. On March 23, 2022, the Court accepted the magistrate judge's recommendation on that claim, Docket No. 144, and granted Dr. Tiona's motion. Docket No. 148 at 14–15. The Court concluded that no reasonable jury could find that Dr. Tiona's exercise of her medical judgment amounted to an Eighth Amendment violation. *Id.* at 5–10.

---

[2] Plaintiff's amended complaint also identifies Doe as president and CEO of CHP. Docket No. 28 at 1. In CHP's answer to the amended complaint, CHP identified Jeff Archambeau as president and CEO of CHP. *See* Docket No. 31 at 1 n.1. In his objection, plaintiff refers to Archambeau, rather than Doe, *see, e.g.*, Docket No. 150 at 3, and so will the Court.

2

The remaining defendants (CHP and Archambeau, collectively, "CHP Defendants") have also moved for summary judgment on the claims against them, namely, plaintiff's Eighth Amendment and civil conspiracy claims. *See generally* Docket No. 108. In addition, plaintiff seeks to amend his complaint to add allegations that he is a third-party beneficiary to a contract between the Colorado Department of Corrections ("CDOC") and CHP. Docket No. 118 at 2. Plaintiff seeks to add a breach of contract claim, alleging that he was injured by CHP's failure to establish appropriate policies and procedures. *See* Docket No. 118-2 at 16–17, ¶¶ 43–48.[3]

The magistrate judge recommends that the CHP Defendants' motion for summary judgment be granted and that plaintiff's motion for leave to amend be denied. Docket No. 149 at 2–3, 9. Plaintiff timely objected to the recommendation, Docket No. 150, and the CHP Defendants responded. Docket No. 151.

## II. LEGAL STANDARDS

The Court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *Gordanier v. Montezuma Water Co.*, No. 08-cv-01849-PAB-MJW, 2010 WL 935665, at *1 (D. Colo. Mar. 11,

---

[3] Pursuant to the Local Rules, a party seeking to amend a pleading by motion, rather than as a matter of course or by consent, must "attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g., ~~strikes through~~) the text to be deleted and underlines (e.g., underlines) the text to be added." D.C.COLO.LCivR 15.1(b). Plaintiff did not do so, and consequently his motion does not comply with the Local Rules. Although plaintiff is proceeding *pro se*, and the Court liberally construes his pleadings without acting as his advocate, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), plaintiff must follow the same procedural rules that govern other litigants. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994). The Tenth Circuit has affirmed the district court's denial of a motion for failure to comply with a local rule. *See, e.g.*, *Shrader v. Biddinger*, 633 F.3d 1235, 1249 (10th Cir. 2011).

2010) ("Timely objections to magistrate judge recommendations are reviewed de novo pursuant to Rule 72(b), rather than under the clearly erroneous/contrary to law standard applied to magistrate judge orders by Rule 72(a)."). An objection is "proper" if it is both timely and specific. *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Id.*

In the absence of an objection, the district court may review a magistrate judge's recommendation under any standard it deems appropriate. *See Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings."). The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes. This standard of review is something less than a "clearly erroneous or contrary to law" standard of review, Federal Rule of Civil Procedure 72(a), which in turn is less than a de novo review. Fed. R. Civ. P. 72(b).

When reviewing a party's objection to a magistrate judge's order on a non-dispositive matter, the court "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997); *see Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519–20 (10th Cir. 1995) ("Even though a movant requests a sanction that would be dispositive, if the magistrate judge does not impose a dispositive sanction the order falls under Rule 72(a) rather than Rule 72(b).").

There is no dispute that the CHP Defendants' motion for summary judgment is dispositive, and the Court reviews the magistrate judge's recommendation on that motion de novo. *See Gordanier*, 2010 WL 935665, at *1. The CHP Defendants, however, argue that the motion to amend is non-dispositive. Docket No. 151 at 2–3 ("The Recommendation addresses both dispositive and non-dispositive issues (i.e. CHP Defendants' Motion for Summary Judgment and Plaintiff's Motion for Leave, respectively)."). The Court disagrees. Motions to amend are generally considered non-dispositive except where, as here, the magistrate judge recommends that the motion for leave to amend be denied. *See Tuft v. Indem. Ins. Co. of N. Am.*, No. 19-cv-01827-REB-KLM, 2020 WL 9432879, at *1 (D. Colo. May 21, 2020); *Gordanier*, 2010 WL 935665, at *1; *Brown v. Nagem*, No. 05-cv-01408-WYD-MJW, 2006 WL 2164421, at *1 (D. Colo. July 28, 2006). The Court thus reviews both portions of the recommendation de novo.

### III. ANALYSIS

#### A. CHP Defendants' Motion for Summary Judgment

The magistrate judge recommends granting the CHP Defendant's motion for summary judgment on plaintiff's Eighth Amendment and civil conspiracy claims. Docket No. 149 at 5–6.

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where, as here, "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115. When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

### 1. Plaintiff's Eighth Amendment Claim

The Eighth Amendment's prohibition on cruel and unusual punishment is violated if a defendant's "deliberate indifference to serious medical needs . . . constitutes the unnecessary and wanton infliction of pain." *Self v. Crum*, 439 F.3d 1227, 1230 (10th

Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A claim for deliberate indifference has both an objective and a subjective component. To satisfy the objective component, a plaintiff must demonstrate that his medical need is "objectively, sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (citation omitted). To satisfy the subjective component, a plaintiff must demonstrate that the defendant acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. "'[D]eliberate indifference' is a stringent standard of fault." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). "A showing of simple or even heightened negligence will not suffice." *Id.* at 407; *see also Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1286 (10th Cir. 1999). Instead, the defendant must "know[] of and disregard[] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

The magistrate judge noted that plaintiff's Eighth Amendment claim against the CHP Defendants is that "CHP's cost-saving/indemnification policy caused Dr. Tiona to make decisions regarding [plaintiff's] treatment based on the policy rather than [on] her medical judgment," Docket No. 149 at 3 (citing Docket No. 28 at 11–13, ¶¶ 27–39),[4] and

---

[4] Plaintiff appears to agree with this characterization and states that the "crux" of his complaint against the CHP Defendants is that the CHP Defendants "act in a role of a medical gatekeeper and [CHP's] policies, customs, and/or practices were the motivating force behind [Dr.] Tiona's failure to request an MRI for [p]laintiff's [sic] on or prior to

7

that "Archambeau 'adjudicates claims without making any medical decision, in complete disregard to inmates' actual medical needs.'" *Id.* (quoting Docket No. 28 at 12, ¶ 31).

The recommendation explains that "'[t]he plain wording of [§ 1983] contains an element of causation,' and thus, 'a defendant may not be held liable under § 1983 unless he or she subjected a citizen to the deprivation, or caused a citizen to be subjected to the deprivation.'" *Id.* at 4 (quoting *McDonald v. Wise*, 769 F.3d 1202, 1215 (10th Cir. 2014) (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998))). The magistrate judge concluded that a reasonable jury could not find that the CHP Defendants caused plaintiff to be deprived of his Eighth Amendment rights and, therefore, the CHP Defendants are entitled to summary judgment on this claim. *Id.*

As to Archambeau, the magistrate judge concluded that there is no disputed issue of material fact that Archambeau personally participated in any alleged constitutional violation and defendants' identification of Archambeau as president and CEO of CHP does not mean that defendants concede Archambeau's personal involvement in any constitutional violations. *Id.* at 4–5. As to CHP, the magistrate judge concluded that, because plaintiff's "theory of liability against CHP is contingent on a determination that CHP's cost-savings/indemnification policy influenced Dr. Tiona's decision to delay requesting an MRI," which theory the Court already rejected, *see* Docket No. 149 at 5–6, a reasonable jury could not find that any alleged CHP policy was the cause of any constitutional violation or injury to plaintiff. Docket No. 149 at 5–6.

---

January 17, 2107 [sic] [,] a delay that resulted in life-altering injuries to [p]laintiff's knee." Docket No. 150 at 4 (citing Docket No. 28 at 11–13, ¶¶ 27–39).

8

Plaintiff makes three main objections to the magistrate judge's recommendation on the Eighth Amendment claim. Plaintiff's first argument concerns the Court's order on Dr. Tiona's summary judgment motion. *See* Docket No. 150 at 4–5. In response to that motion, plaintiff provided a printout of a website titled "Knee MRI" and "MCG Health, Ambulatory Care." *See* Docket No. 148 at 8 (citing Docket No. 127-5). The Court's order explained that plaintiff's "interpretation of the website, which he claims shows when a knee MRI is warranted, does not establish Dr. Tiona's state of mind or demonstrate that she consciously disregarded plaintiff's risk of serious harm when she exercised her medical judgment and reached a different conclusion than plaintiff's lay diagnosis." *Id.* The Court also determined that the website printout was inadmissible hearsay. *See id.* at 9 & 9 n.2 ("The MCG Health document is inadmissible hearsay." (citing *McCleland v. Raemisch*, No. 18-cv-00233-PAB-NYW, 2021 WL 3510808, at *2 (D. Colo. Aug. 10, 2021) (finding medical textbook excerpts to be inadmissible hearsay in summary judgment context and that the plaintiff's interpretation of the excerpts was not competent evidence because the plaintiff had not shown that he had any medical expertise), *aff'd*, No. 21-1303, 2022 WL 1593414 (10th Cir. May 20, 2022)). The Court, however, explained that, even if the printout were admissible, it was not sufficient to show that Dr. Tiona acted with deliberate indifference to plaintiff's serious medical needs, but could show that Dr. Tiona disagreed with plaintiff's lay interpretation of the document or, at most, that Dr. Tiona was negligent, which, the Court explained, is not sufficient for a constitutional violation. *Id.* at 10 ("simple or even heightened negligence will not suffice" for an Eighth Amendment violation (citing *Brown*, 520 U.S. at 407)).

Plaintiff now argues that the Court erred in its evidentiary ruling because

9

defendants produced the documents in discovery. Docket No. 150 at 4–5. Plaintiff's objection is unconvincing. First, even if the plaintiff were correct that the document is admissible, the Court still found that plaintiff's claim failed on the merits because the document states that a knee MRI "may" be indicated when certain factors are present, not that an MRI is always indicated or that it is a dereliction of a doctor's duty of care not to order an MRI in such a case. Docket No. 148 at 9 (citing Docket No. 127-5 at 1). In light of the document's use of "may," the Court found that plaintiff failed to show how a reasonable jury could find that Dr. Tiona's exercise of her medical judgment amounts a conscious disregard of a substantial risk of serious harm. *Id.* at 9–10. Second, plaintiff may not now seek reconsideration of the Court's order on the recommendation to grant Dr. Tiona's summary judgment motion through his objections to the recommendation to grant the CHP Defendants' summary judgment motion.

Moreover, the undisputed facts show that plaintiff received substantial medical treatment from Dr. Tiona and others. *See* Docket No. 108 at 3–6, ¶¶ 4–23. For instance, Dr. Tiona examined plaintiff on December 12, 2016, but did not see swelling, crackling under the skin, or obvious loosening of the knee ligaments. Id. at 3–4, ¶¶ 4–7. At that appointment, Dr. Tiona ordered x-rays and prescribed an "ace wrap" and topical, non-steroidal anti-inflammatory pain-relieving gel. *Id.* at 4, ¶¶ 7–8. Although, on January 12, 2017, the x-rays did not reflect any abnormality of immediate concern, Dr. Tiona noticed visible swelling of plaintiff's knee. *Id.* at 4, ¶ 10. Yet, by February 27, 2017, plaintiff indicated that his knee had improved since receiving a steroid injection. *Id.*, ¶¶ 11–14. At an April 18, 2017 follow-up visit, plaintiff complained of increasing pain, and Dr. Tiona requested an MRI from CHP, which was approved on April 22, 2017

10

and completed June 9, 2017. *Id.* at 5, ¶¶ 16–20. Another CDOC doctor requested arthroscopic surgery to repair plaintiff's knee, which CHP approved. *Id.* at 5–6, ¶¶ 22–23. With these facts detailing substantial attention to plaintiff's injuries, which plaintiff does not dispute, no reasonable jury could find that Dr. Tiona or others knew of and consciously disregarded an excessive risk to plaintiff's health or safety. *See Farmer*, 511 U.S. at 837.

Second, as to Archambeau, plaintiff argues that Archambeau admitted that "CHP does not even engage in the practice of medicine when adjudicating MRI referrals," which, plaintiff asserts, means that a jury could "easily" determine that "a medical gatekeeper would be engaged in deliberately indifferent action." Docket No. 150 at 8. This objection is not clear, but plaintiff appears to insist that, although CHP does not engage in the practice of medicine, Archambeau, as head of CHP, acted as a "gatekeeper" to prevent plaintiff from getting a timely MRI, which plaintiff believes should have been ordered immediately. Plaintiff, however, does not specifically object to the magistrate judge's determination that there is no factual dispute regarding Archambeau's lack of personal participation in any of plaintiff's care – and therefore no participation in the alleged constitutional violation.[5] *See* Docket No. 149 at 4–5; *2121 E.*

---

[5] Plaintiff purports to dispute certain facts set forth in the CHP Defendants' motion, but the Court deems these facts admitted for the following reasons. First, the CHP Defendants state that CHP contracts with CDOC to provide health care to CDOC inmates outside the CDOC health car system based upon requests that health care providers submit to CHP. Docket No. 108 at 6, ¶ 25. Plaintiff states that he disputes this characterization of CHP's duties, but states only that the contract speaks for itself and, for support, plaintiff cites the entire 114-page contract. Docket No. 127 at 2, ¶ 25. The Court's practice standards require that any denial must be accompanied with a "**specific reference** to material in the record supporting the denial." Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. A "specific reference" means the "the paragraph or page and line number" or "a reference which will enable the court

11

*30th St.*, 73 F.3d at 1059 (A specific objection "enables the district judge to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."). Assuming CHP is a "medical gatekeeper" of care for CDOC inmates, plaintiff has identified no fact – disputed or undisputed – that Archambeau was personally involved in the provision of plaintiff's care. Nor does the fact that defendants identified Archambeau as head of CHP mean that Archambeau was personally involved in the events of this case. For instance, plaintiff provides no fact that Archambeau reviewed the MRI request, or even established the policies and contract between CDOC and CHP. As the CHP Defendants note, a defendant's position as a supervisor is, by itself, "insufficient to support liability." *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996) (citing *Mitchell v. Maynard*, 80 F. 3d 1433, 1441 (10th Cir. 1996)). This is because a "supervisor is not liable under § 1983 for the actions of a subordinate unless an

---

to ascertain the fact without reviewing the entire document." *Id.*, § III.F.3.b.ii. Second, the CHP Defendants state that Archambeau did not participate in the approval of prior authorizations for medical care related to plaintiff's right knee. Docket No. 127 at 6, ¶ 26. Plaintiff says that he disputes this fact because defendants identified Doe as Archambeau, which means that defendants identified who is responsible for "implementing/enforcing the [c]ontracts [sic] mandates," Docket No. 127 at 2, ¶ 26, but plaintiff does not explain how identifying a Doe defendant could be an admission of Archambeau's personal participation. Third, the CHP Defendants state that Archambeau did not provide medical care or treatment to plaintiff. Docket No. 127 at 6, ¶ 27. Plaintiff again asserts that the CHP Defendants "identified [] Archambeau as the medical gatekeeper." Docket No. 127 at 3, ¶ 27. This dispute is unsupported, and plaintiff fails to explain how identifying a Doe defendant could equate to any substantive admission. Fourth, the CHP Defendants state that plaintiff has no information that Archambeau was enforcing policies relating to the request for an MRI. Docket No. 108 at 6, ¶ 29. Plaintiff relies on the same unpersuasive argument, namely, that the CHP Defendants identified Archambeau as head of CHP. Docket No. 127 at 3, ¶ 29. Moreover, plaintiff answered "[c]orrect" when he was asked in his deposition "you don't have any information to give to me that shows Mr. Archambeau was enforcing this policy as it relates to you and your request for an MRI; correct?" Docket No. 108-7 at 3, 37:19–23.

'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise." *Id.* (quoting *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993)). Plaintiff has identified no genuine dispute of material fact regarding any personal participation of Archambeau, let alone that there was an affirmative link between Archambeau's personal participation and plaintiff's alleged constitutional violation. Moreover, plaintiff misrepresents Archambeau's testimony, which is that, although CHP employees do not engage in the practice of medicine in reviewing MRI referrals, *see* Docket No. 127 at 6, ¶ 11, they do "employ their medical and other healthcare provider knowledge and experiences in evaluating the requests submitted by CDOC healthcare providers." Docket No. 134 at 6, ¶ 11. Even if there were a factual dispute regarding whether a CHP employee properly reviewed an MRI request, and even if that dispute could lead a jury to conclude that CHP committed a constitutional violation, plaintiff has not connected that alleged violation to Archambeau's personal participation. Because there is no factual dispute regarding the lack of any personal involvement by Archambeau in any alleged constitutional violation in plaintiff's medical care, the Court concludes that there is no factual dispute that Archambeau did not cause any deprivation of plaintiff's rights. *See McDonald*, 769 F.3d at 1215. Thus, the Court will overrule this objection and accept the recommendation to grant summary judgment for Archambeau.

Plaintiff's third objection concerns CHP. As the Court has noted, the magistrate judge concluded that, because plaintiff's theory of liability against CHP requires determining that Dr. Tiona's decision not to immediately request an MRI was based not on her medical judgment, but on a CHP cost-savings policy, CHP is entitled to summary

13

judgment because the Court already rejected that theory. *See* Docket No. 149 at 5–6; Docket No. 144 at 7–8.

Plaintiff argues that "[t]he record establishes that [the CHP] Defendants violated their own contractual mandates *de facto* by failing to 'create and maintain a documented UM Program Description . . . [which] shall include at minimum policies and procedures used to evaluate medical necessity, criteria used, information sources, and the process used to review and approve the provisions of medical services.'" Docket No. 150 at 7 (quoting Docket No. 127 at 3, ¶ 1 (emphasis omitted)). Plaintiff asserts that the CHP Defendants have "egregiously violated their contractual duties," which "would allow a jury to infer the subjective component of the deliberate indifference test." *Id.* Plaintiff appears to argue that the CHP Defendants' alleged contractual violation means that they "fail[ed] to take reasonable measures to abate" the serious risk to plaintiff. *Id.* (quoting *Hunt*, 199 F.3d at 1224).[6] The Court is not convinced. As the Court has explained, "'deliberate indifference' is a stringent standard of fault." *Brown*, 520 U.S. at 410. Even if there were facts from which a reasonable jury could conclude that Dr. Tiona or the CHP Defendants breached their contract with CDOC, or that the contract or policies were not sufficient, plaintiff provides no facts that could support a jury's conclusion that any defendant acted with a "sufficiently culpable state of mind." *See*

---

[6] The court in *Hunt* explained that courts have found delay in medical care sufficient for an Eighth Amendment violation in cases involving "life-threatening situations and instances in which it is apparent that delay would exacerbate the prisoner's medical problems." *Hunt*, 199 F.3d at 1224 (quoting *Grant v. Bernalillo Cnty. Det. Ctr.*, 173 F.3d 863 (10th Cir. 1999) (Table), 1999 WL 157415, at *2). The Court has assumed that plaintiff's medical issues were sufficiently serious to satisfy the objective component for an Eighth Amendment claim. *See* Docket No. 148 at 6; Docket No. 144 at 5–6.

14

*Farmer*, 511 U.S. at 834.  At most, plaintiff has shown a factual issue that Dr. Tiona or the CHP Defendants were negligent, but "simple or even heightened negligence will not suffice" for an Eighth Amendment violation.  *See Brown*, 520 U.S. at 407.  Accordingly, the Court will overrule plaintiff's objections and will grant summary judgment for the CHP Defendants on plaintiff's Eighth Amendment claim.

### 2. Plaintiff's Civil Conspiracy Claim

Plaintiff brings a civil conspiracy claim against the CHP Defendants.  Docket No. 28 at 16–17, ¶¶ 54–58.  Plaintiff alleges that CDOC and CHP have agreed to "prevent[] [p]laintiff from being provided adequate medical care" and "incentiviz[e] cost savings over the health and well-being of inmates in the CDOC," including by "instructing CDOC medical providers . . . to exhaust conservative treatment before applying for an MRI," to "disregard" rules and regulations, and to ignore providers' own "medical judgment, their Hippocratic Oath, and community standards of care."  *Id.* at 16–17, ¶ 55.

The magistrate judge noted that, "[u]nder Section 1983, the Tenth Circuit recognizes a claim for civil conspiracy to deprive plaintiff of a constitutional or federally protected right under color of state law."  Docket No. 149 at 6 (quoting *Fisher v. Lynch*, 531 F. Supp. 2d 1253, 1265 n.6 (D. Kan. 2008)).  "[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient."  *Id.* (quoting *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990)).  Because no reasonable jury could find that the CHP Defendants committed an "actual deprivation of rights," the magistrate judge recommends granting summary judgment in the CHP Defendants' favor on plaintiff's civil conspiracy claim.  *Id.*

15

Plaintiff makes only a passing reference to his civil conspiracy claim in his objections.  See Docket No. 150 at 9 ("Outside of [Dr.] Tiona's own failures as CDOC's Chief Medical Officer to formulate any UM or MRI adjudication policies, CHP [sic] failure to create or maintain any UM policies or practices establishes a *prima facie* civil conspiracy.").  This objection is not "specific" because it does not "enable[] the [Court] to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute."  See *2121 E. 30th St.*, 73 F.3d at 1059.  Thus, plaintiff is not entitled to de novo review, and the Court reviews the recommendation for clear error.  Based on this review, the Court has concluded that this portion of the recommendation is a correct application of the facts and the law and is not clearly erroneous.  Therefore, the Court will grant the CHP Defendants' motion and will dismiss plaintiff's civil conspiracy claim.

### B.  Plaintiff's Motion for Leave to Amend

Plaintiff seeks to amend his complaint to add a state-law claim for breach of contract, alleging that he was injured by CHP's failure to establish policies and procedures regarding "medical necessity."  See Docket No. 118-2 at 16–17, ¶¶ 43–48.  As the Court has noted, plaintiff's motion fails to comply with the Local Rules.  See D.C.COLO.LCivR 15.1(b).  The magistrate judge recommends denying the motion to amend, in part because this late amendment would cause undue delay and prejudice to defendants, as the Court would have to reopen discovery, issue a new scheduling order, and begin this matter again on this new claim.  See Docket No. 149 at 6–9.  The magistrate judge also recommends denying the motion to amend because amendment would be futile.  *Id.*  As the magistrate judge explains, if the Court accepts the recommendation to dismiss plaintiff's constitutional claims, a potential state-law contract

claim would be before the Court on supplemental jurisdiction, which the Court would decline to exercise. *Id.* at 9.

Plaintiff does not address this jurisdictional issue in his objections. *See* Docket No. 150 at 9–11. The Court therefore reviews the non-objected to portions of the recommendation to confirm that there is "no clear error on the face of the record." Fed. R. Civ. P. 72(b), Advisory Committee Notes; *Summers*, 927 F.2d at 1167; *Thomas*, 474 U.S. at 150. Finding none, the Court accepts the recommendation. Although the Court may exercise supplemental jurisdiction over a state law claim if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction," and the Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," the court "should decline the exercise of jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229–30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted), *abrogated on other grounds by Torres v. Madrid*, 414 S. Ct. 989 (2021). This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits." *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)). Plaintiff has presented no reasons for the Court to retain jurisdiction. Therefore, because the Court would decline to exercise supplemental jurisdiction over plaintiff's claim for breach of contract, amendment would be futile, and the Court will accept the recommendation. *See, e.g.*, *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 976 (10th Cir. 2021) ("On remand, the district court would not need to revisit whether the premises liability claim

is futile because, especially in the absence of any federal claim, it may exercise its discretion to decline supplemental jurisdiction over any potential state law claim."); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1210, 1218 (10th Cir. 2014) (affirming "the district court's denial of [p]laintiff's motion to amend because . . . it would be futile to proceed with state-law claims that would be dismissed upon rejection of the federal claims" and noting that "[i]t would be futile to proceed with any new state-law claims if they would be dismissed (without prejudice) anyway once the federal claims were dismissed.").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Recommendation re: Defendants' Motion for Summary Judgment [Dkt. 108] & Plaintiff's Motion to Amend [Dkt. 118] [Docket No. 149] is **ACCEPTED**. It is further

**ORDERED** that Plaintiff's Objection to Magistrates' [sic] Recommendation re: Defendant's [sic] Motion for Summary Judgment [Dkt. 108] & Plaintiff's Motion to Amend [Dkt. 118] [Docket No. 150] is **OVERRULED**. It is further

**ORDERED** that the Motion for Summary Judgment from Defendants Correctional Health Partners and Jeff Archambeau [Docket No. 108] is **GRANTED**. It is further

**ORDERED** that all claims against defendants Correctional Health Partners and John Doe, M.D. are **DISMISSED with prejudice**. It is further

**ORDERED** that Plaintiff's Request for Leave to File Supplemental/Amended Complaint [Docket No. 118] is **DENIED**. It is further

**ORDERED** that Plaintiff's Request for Extension to Respond to Defendant's [sic] Motions for Summary Judgment [Docket No. 121] is **DENIED as moot**. It is further

**ORDERED** that this case is closed.

DATED September 22, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge